Attorneys for Appellant/
Cross-Appellee

George E. Purdy
George T. Patton
Stephanie F. Holtzlander
J. Taggart Birge
Bose, McKinney, & Evans
Indianapolis, Indiana

Attorneys for Amicus Curiae,
Defense Trial Counsel of Indiana

Julie Blackwell Gelinas
Nelson D. Alexander
T. Joseph Alexander
Lock, Reynolds, Boyd, & Weisell
Indianapolis, Indiana

James D. Johnson
Mattingly, Rudolph, Fine, & Porter, LLP
Evansville, Indiana

Attorneys for Appellees/
Cross-Appellants

Nancy G. Endsley
Landman & Beatty
Indianapolis, Indiana

Linda George
W. Russell Sipes
Laudig, George, Rutherford, & Sipes

Allard A. Allston, III
Timothy Eble

Ness Motley Loadholt Richardson & Poole
Charleston, South Carolina

Attorneys for Amicus Curiae,
Indiana Trial Lawyers Association

James O. McDonald
Everett, Everett, & McDonald
Terre Haute, Indiana

Max E. Goodwin
Hansford C. Mann
Bruce D. Aukermann
Mann Law Firm
Terre Haute, Indiana

Attorney for Amicus Curiae,
Indiana State afl-cio

William R. Groth
Fillenwarth, Dennerline, Groth, & Towe
Indianapolis, Indiana

 IN THE
 INDIANA SUPREME COURT

OWENS CORNING FIBERGLASS CORP.,
 Appellant/Cross-Appellee (Defendant below)

)
) Supreme Court No.
) 49S04-0001-CV-00033

 v.

DAVID COBB and Melissa Hinds, As Personal Representatives of the Estate of
Kenneth Cobb, Deceased,
) Court of Appeals No.
) 49A04-9801-CV-46

)
)
)
)
)

 APPEAL FROM THE MARION COUNTY SUPERIOR COURT, CIVIL, NO. 2
 The Honorable Kenneth H. Johnson, Judge
 Cause No. 49D02-9501-MI-1-47

 ON PETITION TO TRANSFER

 September 10, 2001

SULLIVAN, Justice.

 A jury awarded plaintiff Kenneth Cobb damages, finding that asbestos
manufactured by Owens Corning caused him serious illness. We find that
there was sufficient evidence of exposure to Owens Corning's asbestos to
permit Cobb to present his case to the jury. But we reverse the jury award
because the trial court incorrectly prohibited Owens Corning from
presenting evidence that at least one other "nonparty" manufacturer may
also have been at fault.

 Background

 Kenneth Cobb worked as a pipe fitter from 1955 until he had to retire
in 1995 because he was diagnosed with lung cancer. Prior to developing
lung cancer, Cobb was diagnosed with asbestosis in October 1989.

 Cobb specialized in working on refrigeration, air conditioning and
heating systems, and pneumatic control systems. For 40 years, Cobb’s work
required that he remove and replace asbestos insulation and wallboard, walk
on asbestos blankets, disrupt asbestos-containing insulation as he worked
on various systems, and cut and fit asbestos tubing, pipe, and sheets.

 On July 24, 1996, Cobb filed a complaint against 33 manufacturers or
distributors of asbestos, including Owens Corning Fiberglas Corporation
(“Owens Corning”). Cobb claimed that the defendants:

 produced, sold and otherwise put into, or caused to be put into, the
 stream of interstate commerce, asbestos and asbestos-containing
 materials which Defendants … knew, or in the exercise of ordinary care
 should have known were deleterious, poisonous and highly harmful to
 [Cobb’s] body, lungs, respiratory system, skin and health. [Cobb] was
 exposed to and inhaled, ingested or otherwise absorbed great amounts
 of asbestos fibers causing him to develop the asbestos disease,
 asbestosis, and lung cancer.

Cobb sought both compensatory and punitive damages under “product liability
theories of negligence, strict liability and breach of warranty.” In July
1996, Cobb also sought and was granted an expedited jury trial because his
lung cancer had metastasized to his brain and he did not have a long life
expectancy.

 Owens Corning filed its answer on August 19, 1996. Among the 34
affirmative defenses Owens Corning asserted, it reserved the right to
object to any settlement and subsequent dismissal of any defendant. Owens
Corning also asserted a reserved right to amend its answer to “specifically
delineate those defendants as settling non-party defendants, to request
that the court add those defendants to any verdict form submitted to the
jury, and to claim credit for any amounts received by the plaintiff from
those defendants.”

 On September 26, 1997, Cobb filed a motion for partial summary
judgment against Owens Corning as to its affirmative defenses, asserting
that Owens Corning had not presented sufficient evidence to support them.
On November 4, 1997, the trial court granted Cobb’s motion for partial
summary judgment with respect to all of the affirmative defenses set out in
Owens Corning’s original answer except for the defense of contributory
fault.

 Also on September 26, 1997, Owens Corning filed a motion for summary
judgment based upon lack of product identification, arguing that, in his
deposition, Cobb had failed “to provide any evidence proving that he was
exposed to asbestos-containing products manufactured or distributed” by
Owens Corning. On October 28, 1997, the trial court denied without comment
Owens Corning’s motion for summary judgment based upon lack of product
identification. The trial court’s ruling against Owens Corning on this
motion is one of the two issues in this appeal.

 On October 15, 1997, Owens Corning also filed a motion for leave to
amend its answer by adding as identified non-parties the names of the
defendants with whom Cobb had settled, the Johns-Manville Trust, and other
entities which caused or contributed to Cobb’s injuries and had not been
joined as defendants. In its order issued November 4, 1997, the trial
court granted Owens Corning’s motion to amend its answer as to the non-
party defense of one non-party, Rutland Fire Clay, but denied it in all
other respects. The trial court’s ruling against Owens Corning on this
motion is the other of the two issues in this appeal.

 After an eight-day trial in November 1997, a jury rendered its verdict
in favor of Cobb. The jury awarded Cobb $689,782 in compensatory damages,
(which was offset by $145,100 that had previously been paid to Cobb by
other defendants), $15,000,000 in punitive damages, and $100 in court
costs.[1] Owens Corning appealed the trial court’s rulings on the product
identification and non-party defense motions. The Court of Appeals
reversed the trial court’s judgment on the product identification issue,
directing the trial court to enter an order granting Owens Corning’s motion
for summary judgment, and rendering the non-party defense issue moot. See
Owens Corning Fiberglas Corp. v. Cobb, 714 N.E.2d 295, 303-04 (Ind. Ct.
App. 1999). Having previously granted transfer, we now review the trial
court’s rulings on the parties’ product identification and non-party
defense motions.

 Additional facts will be provided as necessary.

 Discussion

 Our standard of review for summary judgment appeals is well
established. An appellate court faces the same issues that were before the
trial court and follows the same process. See Winkler v. V.G. Reed & Sons,
Inc., 638 N.E.2d 1228, 1231 (Ind. 1994) (citing Greathouse v. Armstrong,
616 N.E.2d 364, 367 (Ind. 1993)). The party appealing from a summary
judgment decision has the burden of persuading the court that the grant or
denial of summary judgment was erroneous. See Greathouse, 616 N.E.2d at
365 (citing Dept. of Revenue v. Caylor-Nickel Clinic, 587 N.E.2d 1311, 1313
(Ind. 1992)). When a trial court grants summary judgment, we carefully
scrutinize that determination to ensure that a party was not improperly
prevented from having its day in court. Id.; Estate of Shebel ex rel.
Shebel v. Yaskawa Elec. Am., Inc., 713 N.E.2d 275, 277 (Ind. 1999).

 Summary judgment is appropriate only if the pleadings and evidence
sanctioned by the trial court show that “there is no genuine issue as to
any material fact and that the moving party is entitled to judgment as a
matter of law.” Ind. Trial Rule 56(C); see also Shell Oil Co. v. Lovold
Co., 705 N.E.2d 981, 983-84 (Ind. 1998). On a motion for summary judgment,
all doubts as to the existence of material issues of fact must be resolved
against the moving party. See T. R. 56(C); see also Butler v. City of
Peru, 733 N.E.2d 912, 1915 (Ind. 2000); Stapinski v. Walsh Const. Co., 395
N.E.2d 1251,1253 (Ind. 1979). Additionally, all facts and reasonable
inferences from those facts are construed in favor of the nonmoving party.
Stapinski v. Walsh Const. Co., 395 N.E.2d at 1253. If there is any doubt
as to what conclusion a jury could reach, then summary judgment is
improper. See Hall Bros. Const. Co., Inc. v. Mercantile Nat’l Bank of
Indiana, 642 N.E.2d 285, 289 (Ind. Ct. App. 1994) (“If a jury could come to
different conclusions from the undisputed facts, then summary judgment is
inappropriate.”); see also Bochnowski v. Peoples Fed. Sav. & Loan Ass’n,
571 N.E.2d 282, 285 (Ind. 1991); Woodward Ins., v. White, 437 N.E.2d 59, 62
(Ind. 1982) (“Summary judgment should not be granted if the facts give rise
to conflicting inferences which would alter the outcome.”).

 I

 Owens Corning argues that it was wrongfully denied summary judgment
because Cobb had failed “to provide any evidence proving that he was
exposed to asbestos-containing products manufactured or distributed” by
Owens-Corning. We do not address whether Owens Corning demonstrated “the
absence of any genuine issue of fact as to a determinative issue,” Jarboe
v. Landmark Comm. Newspapers of Indiana, Inc., 644 N.E.2d 118, 123 (Ind.
1994), because we find that Cobb did present sufficient evidence to
establish a genuine issue of material fact as to exposure.

 Owens Corning contends that the record at summary judgment showed that
“Cobb could not identify a single occasion at which he had been exposed to
Kaylo.” (Br. of Appellant/Cross-Appellee in Opp’n to Pet.to Transfer at
5.) Therefore, according to Owens Corning, one could only speculate as to
whether Cobb had been exposed to Owens Corning’s product, and “testimony
based on conjecture or speculation is insufficient to support a claim.”
(Id. at 7.)

 Cobb presented evidence that he was exposed to Kaylo asbestos when he
worked as a pipe fitter for the Indianapolis Public Schools (IPS).[2] In
his deposition, Cobb stated that while working for IPS he worked at
multiple sites where Kaylo asbestos products were being used. He remembers
seeing the boxes of the Kaylo asbestos products at some of the sites. And
although Cobb did not install the asbestos products, he worked near other
workers who did. Cobb also testified that he removed pipe covering and was
exposed to asbestos dust as a result.

 Owens Corning contends, based on Cobb’s deposition, that Cobb was not
certain whether he was exposed to Kaylo.[3] Owens Corning argues, “Cobb
could not recall the identity of a single specific worksite in which he
actually observed workers installing Kaylo.” (Appellant/Cross-Appellee Br.
at 5). Owens Corning also points out that although Cobb removed pipe
covering, he did not know whose product he was removing.

 Cobb’s evidence was sufficient to establish a genuine issue of
material fact as to whether Owens Corning’s asbestos caused his injuries.
While Owens Corning succeeded in identifying areas of uncertainty in the
record, they did not show that Cobb would not be able to prove causation.
The Court of Appeals stated, “Cobb’s testimony place[d] an undetermined
number of boxes containing Kaylo at an undetermined number of job sites at
which he worked.” Owens, 714 N.E.2d at 303. However, Cobb’s testimony
established that Cobb worked at multiple sites where asbestos products were
used; Cobb worked near people installing pipe insulation containing
asbestos; and boxes of Kaylo pipe insulation products were present on the
work sites. We find it to be a reasonable inference, not conjecture or
speculation, that the insulation from the Kaylo boxes was being installed
at the worksites where it was present and not simply being stored there.

 II

 When we grant transfer in an appeal, we have jurisdiction over all
issues in the case as if the appeal was originally filed in this court.
Ind. Appellate Rule 11(B)(3).[4] Because the Court of Appeals reversed the
trial court on Owens Corning’s lack of product identification claim
discussed in Part I, it did not address Owens Corning’s other claim in this
appeal relating to non-party defendants. Because we have reached a
different result from the Court of Appeals on the issue that it found
dispositive, we are required to address this additional claim. On this
issue, the summary judgment principles discussed in Part I cut in Owens
Corning’s favor.

 A

 The procedural posture of this issue is complicated and, although we
shall attempt to delineate it with some precision in a moment, it is worth
stating at the outset that what is at stake is whether the trial court
committed reversible error when it did not permit Owens Corning to assert
certain “nonparty” defenses.

 Under Indiana's comparative fault statute, a named defendant may
assert a "nonparty" defense, seeking to attribute fault to a nonparty
rather than to the defendant. See Ind. Code § 34-4-33-10(c) (1993);[5] see
also Mendenhall v. Skinner & Broadbent Co., Inc., 728 N.E.2d 140, 142 (Ind.
2000). The Comparative Fault Act modifies the common law rule of
contributory negligence which precluded a victim from recovering damages if
the victim was even slightly negligent. See Mendenhall at 142;
Indianapolis Power & Light Co. v. Brad Snodgrass, Inc., 578 N.E.2d 669, 672
(Ind.1991). The Act permits a jury to allocate fault among parties. The
burden of proof of a nonparty defense is upon the defendant, who must
affirmatively plead the defense. See Ind. Code § 34-4-33-10(b) (1993).[6]

 Cobb’s complaint named multiple parties as defendants. In its answer,
Owens Corning included affirmative defenses that indicated its intent to
assert nonparty defenses with respect to any named defendants with whom
Cobb settled prior to trial and to any entities with whom Cobb may have
settled prior to filing his complaint. The pleading was general in nature
and did not name any specific nonparties that Owens Corning would include
in the action.[7]

 On September 26, 1997, Cobb made a motion for partial summary judgment
as to Owens Corning’s affirmative defenses. Cobb argued that there was no
evidence in the record by which Owens Corning could meet its burden of
proof as to affirmative defenses, including those asserting that a nonparty
was responsible for Cobb’s injuries. In his motion, Cobb designated
portions of Owens Corning’s response to an interrogatory. The
interrogatory requested that Owens Corning disclose the names of any third
parties that Owens Corning believed to be partially responsible for Cobb’s
injuries. Owens Corning had responded that this was “unknown, pending
completion of discovery, Owens Corning will supplement this interrogatory
answer, if necessary, at that time.” [8]

 In response to Cobb’s motion for summary judgment, Owens Corning did
two things. First, it filed a motion for leave to amend its answer, this
time specifically naming each nonparty that it intended to add. Second, it
filed a response to Cobb’s motion for summary judgment in order to
designate evidence of each nonparty’s fault.

 Owens Corning’s motion for leave to amend its answer was filed on
October 15, 1997. Its proposed amended answer sought to add as identified
nonparties the names of the defendants with whom Cobb had settled, the
Johns-Manville Trust, and other entities that it contended had caused or
contributed to Cobb’s injuries and had not been joined as defendants.

 Owens Corning filed its opposition to Cobb’s motion for summary
judgment contemporaneous to its motion for leave to amend its answer. The
opposition to summary judgment cross-referenced its proposed amended
answers and designated evidence as to each party that it included in the
answer. Owens Corning argued that there was at least a material issue of
fact as to whether it would have been able to meet its burden of proof to
show that each proposed nonparty contributed to Cobb’s injuries.

 Cobb then replied to Owens Corning’s response to his motion for
summary judgment and responded to Owens Corning’s motion for leave to amend
its answer.[9] Cobb argued two reasons the trial court should disallow the
nonparties proffered by Owens Corning. First, Cobb argued that some of the
parties were not added in a timely manner according to Indiana Code § 34-4-
33-10(c) (1993).[10] Second, Cobb argued that Owens Corning did not have
sufficient evidence to prove that a nonparty contributed to Cobb’s
injuries.

 The bottom line on this lengthy procedural recitation is that Cobb
sought summary judgment on two grounds with respect to Owens Corning’s
nonparty affirmative defenses: (1) that there was no genuine issue of
material fact that the nonparties were not responsible for Cobb’s injuries;
and (2) that as a matter of law Owens Corning was out of time to add
nonparty defendants.

 As might be expected, the trial court ruled on both Owens Corning’s
motion to amend and Cobb’s motion for summary judgment at the same time.
The court’s order granted Cobb’s motion for partial summary judgment as to
the affirmative defenses and denied Owens Corning’s amended answer as to
all but one party, Rutland Fire Clay.[11] The trial court’s order did not
explain its ruling and it is impossible to know whether the trial court
could have excluded nonparties based on Cobb’s timeliness argument, his
evidentiary argument, or for some other reason.

 B

 Two of the entities with respect to which Owens Corning sought to
assert a nonparty affirmative defense were Sid Harvey Industries, Inc., and
Sid Harvey Midwest, Inc. (collectively, "Sid Harvey"). As noted, the trial
court granted summary judgment to Cobb with respect to this (and Owens
Corning's other) affirmative defenses.

 To the extent that Cobb claimed that there was no evidence that he had
been exposed to asbestos for which Sid Harvey was responsible, Cobb's claim
is the mirror image of that asserted by Owens Corning in the issue
discussed in Part I of this opinion. Had the trial court allowed Sid
Harvey as a nonparty defendant at trial, Owens Corning would have had the
burden of proving that it contributed to Cobb’s injuries. But, like Part
I, we find that Owens Corning presented evidence of a genuine issue of
material fact as to Cobb’s exposure to Sid Harvey asbestos.

 There was designated material in the record that Cobb personally
ordered asbestos materials from Sid Harvey. Cobb testified that he used
Sid Harvey Asbestos Retort and Furnace Cement (which would fracture and
fall to the floor releasing asbestos dust into the air), that he also used
Sid Harvey Mica Back Fill (a loose material that released asbestos fibers
into the air as he poured the material into combustion chambers); and that
he used Sid Harvey Sic-Tits and Sid Harvey asbestos rope packing around
boiler and furnace doors as insulation which was dusty when he scraped it.
Cobb testified that he used these asbestos-containing products on almost
every job site from 1964 through 1977, a period of 13 years. In fact, in
response to Owens Corning's designated evidence, Cobb said in his reply
brief that Owens Corning "provide[d] sufficient evidence of exposure to
avoid summary judgment as to [Sid Harvey]."

 Cobb also made a legal argument as to why he was entitled to summary
judgment as a matter of law. He contended that many of the nonparty
defendants that Owens Corning sought to add were not added in a timely
manner and were therefore barred by Ind. Code § 34-4-33-10(c) (1993).[12]

 The Products Liability Act limits a defendant’s liability according to
its proportion of fault. Ind. Code § 34-20-7-1. Because of this, there is
an incentive for defendants to include nonparties who will share in a
proportion of fault.

 To ensure fairness to the plaintiff, the burden of pleading and
proving the specific name of the nonparty is on the defendant. Cornell
Harbison Excavating, Inc. v. May, 546 N.E.2d 1186, 1187 (Ind. 1989).
Therefore, a defendant who intends to use a nonparty defense must
specifically name the nonparty. Id. Additionally, Indiana Code § 34-4-33-
10(c) requires that a defendant disclose the identity of nonparty
defendants within a certain time frame, thus giving the plaintiff notice of
any nonparty defendants that the defendant intends to add.

 The provision requiring notice of nonparty defendants advances the
Products Liability Act’s policy of proportional allocation of fault.
Giving notice to the plaintiff of nonparty defendants to be added gives the
plaintiff the opportunity to add nonparties as party defendants. Cornell
Harbison, 546 N.E.2d at 1187.

 The deadline for naming a nonparty defendant depends upon when the
defendant receives notice of the availability of a certain nonparty to add.
 Indiana Code § 34-4-33-10(c) states:

 A nonparty defense that is known by the defendant when [the
 defendant] files [the defendant’s] first answer shall be pleaded as a
 part of the first answer. A defendant who gains actual knowledge of a
 nonparty defense after the filing of an answer may plead the defense
 with reasonable promptness. However, if the defendant was served with
 a complaint and summons more than one hundred fifty (150) days before
 the expiration of the limitation of action applicable to the
 claimant’s claim against the nonparty, the defendant shall plead any
 nonparty defense not later than forty-five (45) days before the
 expiration of that limitation of action. The trial court may alter
 these time limitations or make other suitable time limitations in any
 manner that is consistent with: (1) giving the defendant a reasonable
 opportunity to discover the existence of a nonparty defense; and (2)
 giving the claimant a reasonable opportunity to add the nonparty as an
 additional defendant to the action before the expiration of the period
 of limitation applicable to the claim.

 Owens Corning knew of all the companies that it intended to add as
nonparties well before it named them. On November 1, 1996, Cobb filed a
verified disclosure statement that listed the name or type of asbestos-
containing product or item to which Cobb was exposed, as well as all of
Cobb’s former employers that he worked for at the time of each exposure.
The list contained all of the parties that Owens Corning subsequently
sought to add as nonparty defendants. It appears therefore, that Owens
Corning had notice of all these entities as early as November 1, 1996,
nearly a year prior to naming them in its October 15, 1997, motion for
leave to amend its answer.

 Although Owens Corning knew of all the entities early on, many of them
(including Sid Harvey) were named defendants from the outset. We will
return to this category of entities in a moment. The balance of the
entities, however, were never named as defendants and were therefore
available for Owens Corning to add as nonparties at least as early as
November 1, 1996. According to § 34-4-33-10(c), these parties should have
been added with “reasonable promptness” after November 1, 1996.[13] It
therefore appears – although we do not decide – that the trial court’s
grant of summary judgment is sustainable on this legal theory with respect
to nonparty affirmative defenses relating to these entities. See Intelogic
Trace Texcom Group, Inc. v. Merchants Nat’l Bank, 626 N.E.2d 839, 846 (Ind.
App. Ct. 1993) (a trial court's grant of summary judgment will be affirmed
on any legal theory the evidence of record supports).

 The other parties that Owens Corning attempted to add as nonparties
had been named as defendants at the outset of the litigation and
subsequently settled with Cobb or were otherwise dismissed from the action.
 There were two obvious consequences of the fact that these parties were
named defendants. First, since they were named defendants, they could not
be added as nonparties. Second, they were known to the plaintiff.

 The language of Indiana Code § 34-4-33-10(c) (now Indiana Code § 34-51-
2-16) states that, “[a] defendant who gains actual knowledge of a nonparty
defense after the filing of an answer may plead the defense with reasonable
promptness.” (emphasis added). Because the former party defendants that
Owens Corning sought to add as nonparties could only have been added as
nonparties after they were dismissed as parties, we hold that for purposes
of the statute, Owens Corning acquired actual knowledge of a nonparty
affirmative defense relating to a particular entity only when it received
notice that the entity had been dismissed from the action. To hold
otherwise would be tantamount either to requiring Owens Corning to do
something impossible—assert a nonparty affirmative defense with respect to
a named defendant—or to preclude Owens Corning from asserting a nonparty
affirmative defense at all with respect to a former named defendant. We
find no support in the statute or its underlying purposes for either of
these alternatives. Rather, it is clear to us that the notice provisions
with respect to nonparty affirmative defenses are designed, first and
foremost, to advise plaintiffs of potential named defendants from which
they may be able to obtain recovery and, secondarily, to put plaintiffs on
notice generally of the contours of the defendant's case at trial. No
violence is done to either of those objectives by permitting a defendant to
assert a nonparty affirmative defense reasonably promptly after receiving
notice that a named party defendant has been dismissed from the
lawsuit.[14]

 It appears from the record that Owens Corning did not have notice that
certain defendants settled until just prior to the start of the trial.
This appears to have been the case with respect to Sid Harvey. We find
that Owens Corning therefore named Sid Harvey within a reasonable time of
receiving notice. As to the other entities in this category, it therefore
appears – although we do not decide – that the trial court’s grant of
summary judgment was not sustainable under this legal theory.

 C

 We conclude that the trial court committed reversible error when it
granted summary judgment to Cobb with respect to Owens Corning's nonparty
affirmative defense relating to Sid Harvey. Because Owens Corning did not
have the opportunity to present to the jury its claim that a portion of
Cobb's injuries should be allocated to Sid Harvey, the judgment of the
trial court must be reversed. Because we find that the trial court
committed reversible error with respect to this nonparty affirmative
defense, it is not necessary for us to decide whether the trial court was
correct or not when it granted summary judgment to Cobb with respect to
Owens Corning's other proposed nonparty affirmative defenses. We believe
this opinion provides the trial court with sufficient guidance to make such
determinations to the extent requested and necessary on remand.[15]

 III

 In a cross-appeal, Cobb contends that Indiana Code § 34-4-34-5, [16]
which imposes limitations on the award of punitive damages in civil actions
is unconstitutional. Because we have set aside the judgment of the trial
court in its entirety, we do not address this issue at this time. See
Citizens Nat’l Bank of Evansville v. Foster, 668 N.E.2d 1236, 1241 (Ind.
1996) (“‘[C]ourts will not pass upon a constitutional question, and decide
a statute to be invalid, unless a decision upon that very point becomes
necessary to the determination of the cause. This court has repeatedly
held that questions of this character will not be decided unless such
decision is absolutely necessary to a disposition of the cause on its
merits.’”) (quoting State v. Darlington, 153 Ind. 1, 4, 53 N.E. 925, 926
(1899)).

 Conclusion

 Having granted transfer, thereby vacating the opinion of the Court of
Appeals, we now affirm the trial court's denial of Owens Corning's motion
for summary judgment, reverse the trial court's grant of Cobb's motion for
summary judgment with respect to Owens Corning's nonparty affirmative
defense relating to Sid Harvey, and reverse the trial court's judgment in
favor of Cobb. We remand this case to the trial court for further
proceedings consistent with this opinion. The court has been advised that
Owens Corning has filed for bankruptcy with the United States Bankruptcy
Court for the District of Delaware, case No. BK 00-3837. This decision is
subject to applicable rules of bankruptcy law.

 SHEPARD, C.J., and DICKSON, BOEHM, and RUCKER, JJ., concur.
-----------------------
 [1] Both parties filed motions to correct errors with respect to the
damage awards. Cobb now appeals the trial court’s reduction of his
punitive damage award to $1,634,046, pursuant to limits enacted by the
legislature in 1995 (the “Punitive Damage Limitations”). Ind. Code §§ 34-4-
6, 34-4-34-3, and 34-4-34-5 (1993), recodified in 1998 as Indiana Code §§
34-51-3-5, 34-51-31-3, and 34-51-3-6, outlined in Indiana’s Tort Claims Act
and identified by Owens Corning in one of its motions to correct errors.
Cobb claims that the Punitive Damage Limitations unconstitutionally limit
his right to punitive damages and argues that his compensatory damages
should not have been offset by amounts received from settlements with other
defendants. In light of our decision on the non-party defense issue infra
and remand for new trial, we decline to address Cobb’s punitive and
compensatory damages claims.
 [2] Cobb’s deposition contains the following colloquy:
Q: Sir, have you ever, to your knowledge, been on a job site where Kaylo
was being installed?
 A: Yes.
 Q: And do you believe that on those job sites you were exposed to
any airborne asbestos particles?
 A: If the insulators are installing pipe covering and I’m working in
the same area as they are, yes, I would have been exposed to some airborne
particles.
 * * *
Q: …Was OCF Kaylo present somewhere where you worked?
A: Yes, if I was in the school and there were insulators working around
me, they were using some of that, and they were also at times using
Armstrong.
* * *
Q: Tell me how you know OFC Kaylo was used?
A: As I would be around the job site, I would see the boxes.

 [3]Cobb’s deposition also contains the following colloquy:
Q: Have you personally ever installed Kaylo?
A: No.
Q: Have you personally ever removed Kaylo, to your knowledge?
A: Well, I have removed pipe covering that has not been identified…. So
when I remove[d] it, I have no idea who manufactured it.
 * * *
Q: When do you recall first being on an IPS school site where you believe
Kaylo was being installed?
A: It would have been 1963 or 1964.
Q: Which school do you recall, if at all?
A: I don’t.
Q: You don’t?
A: No.
(R. at 1151-1153; Deposition of Kenneth Cobb)

 [4] Ind. Appellate Rule 56(A), effective January 1, 2001.

 [5] Recodified in 1998 as Indiana Code § 34-51-2-14.

 [6] Recodified in 1998 as Indiana Code § 34-51-2-15.

 [7] Owens Corning’s 34th Affirmative Defense:
 To the extent plaintiff has entered into a settlement agreement with
 any party prior to the filing of this Complaint, or the extent
 plaintiff enters into a settlement agreement with any defendant
 subsequent to the filing of this Complaint, [Owens Corning] reserves
 the right to object to that settlement and dismissal of any defendant.
 [Owens Corning] further reserves the right to amend this Answer in
 the future to specifically delineate those defendants as settling non-
 party defendants, to request that the court add those defendants to
 any verdict form submitted to the jury, and to claim credit for any
 amounts received by the plaintiff from those defendants.
(R. at 114-15.)
 [8] Interrogatory No. 47 K inquired:
Do you contend that [plaintiff’s] illness was due to friable or loose
asbestos from the asbestos products of any other company? If so:
(1) The identity of each such company and the name and type of that
company’s product which you contend caused plaintiff’s illness;
(2) The alleged dates of installation;
(R. at 890.)
Owens Corning responded: “Owens Corning may so contend, depending upon the
evidence developed in the course of discovery. Owens Corning will
supplement this interrogatory answer at that time, if necessary.”
(R. at 900.)

 [9] In Cobb’s reply to Owens Corning’s response to his motion for
summary judgment, he noted that Owens Corning relied on its motion for
leave to amend its answer and that he would respond as if that motion had
been granted.
 [10] Recodified in 1998 as Indiana Code §34-51-2-16.

 [11] The trial court’s grant of summary judgment with respect to all
nonparty affirmative defenses while permitting Owens Corning to amend its
complaint to add nonparty Rutland Fire Clay seems contradictory. At trial,
Rutland was dismissed as a nonparty defendant on Owens Corning’s motion.
Cobb argues on appeal that by so moving, Owens Corning has waived any claim
of error with respect to Rutland. Owens Corning responds that its motion
simply recognized that the trial court had granted summary judgment against
on all nonparty affirmative defenses. Our ultimate resolution of the
nonparty issue makes it unnecessary for us to untangle this knot.
[12] Recodified in 1998 as Indiana Code § 34-51-2-16.
 [13] Two sections of the statute appear to modify this "reasonable
promptness" requirement. On the one hand, Indiana Code § 34-4-33-10(c)
(recodified in 1998 as Indiana Code § 34-51-2-16) provides that where a
defendant is served with a complaint and summons more than 150 days before
the expiration of the limitation of action applicable to the plaintiff's
claim against a nonparty, the defendant may not plead any nonparty defense
later than 45 days before the expiration of that limitation of action. On
the other hand, Indiana Code §§ 34-4-33-10(c)(1) and (2) (recodified in
1998 as Indiana Code §§ 34-51-2-16(1) and (2)) permit the trial court to
alter the time limitations of the notice requirement.

 [14] We would find it to be within the discretion of the trial court,
as a matter of case management, to establish an orderly procedure in any
given case for the potential dismissal of named party defendants and
assertion of nonparty affirmative defenses with respect to those entities.
 [15] In arguing against the exclusion of its nonparty affirmative
defenses, Owens Corning contends that one of the nonparties, the Manville
Trust, presents a special case to which the time limitations of Indiana
Code § 34-51-2-16 should not apply. The Manville Trust was established as
the sole source of compensation for claimants injured by exposure to
Manville’s asbestos products. As of the spring of 1990, the Trust was
effectively insolvent. See In re Joint Eastern and Southern District
Asbestos Litigation, 120 B.R. 648 (E. & S.D.N.Y., Bankr. S.D.N.Y. 1990).
Subsequently, a class action settlement was approved by the Eastern and
Southern District of New York courts in 1991. In re Joint Eastern and
Southern District Asbestos Litigation, 129 B.R. 710 (E. & S.D.N.Y. 1991).
The settlement included a Trust Distribution Process to distribute the
limited trust assets among its beneficiaries and rules for the
apportionment of fault among parties and nonparties in state tort actions.
The trial court is free on remand to reconsider its determination that
Owens Corning not be permitted to assert a nonparty affirmative defense
with respect to the Manville Trust.
 [16] Recodified as Indiana Code 34-51-3-5 (1998).