Gary W. OSTERLOO, Appellant–
Defendant,

v.

Charles A. WALLAR, a minor by and through Tina M. WALLAR, his mother and natural guardian, Appellee–Plaintiff.

No. 20A04–00103–CV–117.

Court of Appeals of Indiana.

Oct. 31, 2001.

John R. Obenchain, J. Thomas Vetne, Jones Obenchain, LLP, South Bend, IN, Attorneys for Appellant.

Charles P. Rice, Boveri Murphy Rice Ryan & LaDue, LLP, South Bend, IN, Attorney for Appellee.

## OPINION

BAKER, Judge.

Appellant-defendant Gary W. Osterloo brings this interlocutory appeal.[1] He challenges the trial court's denial of his motion for summary judgment on Charles Wallar's claim against him for personal injuries. Specifically, Osterloo asserts that no evidence was designated to the trial court demonstrating that Osterloo had breached a duty of care to Charles or that any purported breach of a duty proximately caused Charles's injuries. Osterloo also argues that the trial court abused its discretion in refusing to permit him to amend his answer to the complaint in accordance with Ind.Trial Rule 15(A).

### FACTS

On January 21, 1995, approximately six to eight inches of snow fell in Elkhart. The roads in Elkhart were hazardous and slippery as a result of the snowfall. The next day, six-year-old Charles and his two brothers, Brandon Wallar and Scot Eby, obtained permission from their father, William B. Wallar (Mr. Wallar), to go sledding on some piles of fill dirt that were located on an unimproved six-acre parcel of land off Neff Street. Niblock Excavating, Inc. (Niblock Excavating) owned the property and had placed the piles of fill on the parcel during the course of a sanitary sewer construction project it was performing for the City of Elkhart.

As the children began to sled, Scot, who was four years old at the time, started to

---

1. Oral argument was held on October 4, 2001, at Culver Academies. We thank Professor Matthew Gerber for organizing the event and the staff, faculty, and students of Culver Military Academy and Culver Girls Academy for their hospitality. We also commend counsels' oral argument in this cause.

pull Charles and his sled up one of the large dirt piles. The rope slipped from Scot's hands and caused Charles to slide down the front of the hill onto Neff Street. Charles darted into the path of Osterloo's oncoming vehicle. Osterloo estimated that his vehicle was traveling approximately 26 to 27 miles per hour. Just before the collision, Osterloo noticed a "black streak" out of the corner of his left eye as something came "flying out in front of [the] truck." Appellant's App. at 82, 108, 115–16. Osterloo was unable to control his vehicle and eventually skidded into a neighbor's yard after the impact.

Charles filed a complaint against Osterloo on September 20, 1995, for the personal injuries he sustained in the accident.[2] In answering the complaint, Osterloo identified Mr. Wallar and Niblock Excavating as potentially culpable nonparties. Charles then amended his complaint and brought claims against Mr. Wallar and Niblock Excavating. The claim against Niblock Excavating alleged that its negligent placement of the fill dirt piles created an attractive nuisance that proximately caused the injuries.

On March 19, 1997, Mr. Wallar filed a motion for summary judgment, claiming that the doctrine of parental immunity shielded him from liability for his son's injuries as a matter of law. Osterloo then sought leave of the court to amend his answer pursuant to Ind.Trial Rule 15(A),[3] to assert the fault of Mr. Wallar as a nonparty in the event that Mr. Wallar was

dismissed from the action. Charles objected to Osterloo's motion, contending that inasmuch as Mr. Wallar had been joined in the action as a defendant, he could not be later named as a nonparty to the action. Thereafter, the trial court granted both Mr. Wallar's summary judgment motion— after finding that no party had objected to the entry of summary judgment on Mr. Wallar's behalf—and Osterloo's T.R. 15(A) motion. After the T.R. 15(A) motion was granted, Charles moved to strike Osterloo's nonparty defense as to Mr. Wallar. While the motion to strike was under advisement, Osterloo again moved to file an amended answer in accordance with T.R. 15(A), which sought to identify Mr. Wallar and Niblock Excavating as nonparties. The trial court denied Osterloo's motion on December 21, 2000, and determined as follows:

> Defendants William B. Wallar and Niblock Excavating, Inc. were dismissed as defendants in the lawsuit. By definition, a nonparty [according to] Indiana law cannot be "a person who caused or contributed to cause the alleged injury, death, or damage to property but who has not been joined in the action as a defendant." I.C. § 34–6–2–88. Both Wallar and Niblock were joined in the action as **defendants** and thus by statute, cannot be rejoined as non-parties.

Appellant's App. at 21 (emphasis in original). Osterloo now appeals this ruling

---

2. Rita Parsons, who was Charles's guardian ad litem, originally instituted the action against Osterloo. On December 1, 2000, Parsons withdrew as guardian ad litem and the trial court substituted Tina M. Wallar as Charles's next friend.

3. This rule provides in part that:
   A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted, and the action has not been placed upon the trial calendar, he may so amend it at any time within thirty [30] days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be given when justice so requires.
   T.R. 15(A).

along with the denial of his motion for summary judgment.[4]

## DISCUSSION AND DECISION

### I. Standard of Review

■ A grant of summary judgment requires that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). On appeal from summary judgment, the reviewing court faces the same issues that were before the trial court and analyzes them in the same way. *Carie v. PSI Energy, Inc.,* 715 N.E.2d 853, 855 (Ind.1999). We view the pleadings, depositions, answers to interrogatories, and affidavits in the light most favorable to the nonmoving party. *Id.* Although the nonmovant has the burden of demonstrating the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that the nonmovant was not improperly denied his day in court. *Id.*

■ We also note that summary judgment is rarely appropriate in negligence cases. *Tibbs v. Huber, Hunt & Nichols, Inc.,* 668 N.E.2d 248, 249 (Ind.1996). Issues of negligence, contributory negligence, causation and reasonable care are more appropriately left for the determination of a trier of fact. *Ousley v. Bd. of Comm'rs of Fulton County,* 734 N.E.2d 290, 293 (Ind.Ct.App.2000), *trans. denied.*

### II. Osterloo's Claims

#### A. Denial of Summary Judgment

■ Osterloo first contends that the trial court erred in denying his motion for summary judgment. Specifically, he asserts that no designated evidence was presented that supports an inference that Osterloo breached any duty of care owed to Charles, or that any such breach amounted to the proximate cause of Charles's injuries and damages.

Osterloo makes the following arguments in support of his claim that summary judgment was appropriate: 1) evidence showing Osterloo's speed at the time of the accident was not designated to the trial court; 2) Osterloo's alleged violation of our reduced speed statute, IND. CODE § 9–21–5–4,[5] was not a proximate cause of the collision; and 3) Osterloo's alleged failure to maintain a proper lookout did not proximately cause Charles's injuries. Appellant's brief at 12–16.

■ In resolving this issue, we need only examine the relevant provisions of our reduced speed statute:

The driver of each vehicle shall ... drive at an appropriate reduced speed as follows:

(1) When approaching and crossing an intersection or railway grade crossing.

(2) When approaching and going around a curve.

(3) When approaching a hill crest.

(4) When traveling upon a narrow or winding roadway.

(5) *When special hazard exists* with respect to pedestrians or other traffic or *by reason of weather or highway conditions.*

I.C. § 9–21–5–4 (emphasis supplied). Proof of the violation of a safety regulation creates a rebuttable presumption of negligence. *Witham v. Norfolk & W. Ry. Co.,* 561 N.E.2d 484, 485 (Ind.1990). More spe-

---

4. This court ultimately affirmed the entry of summary judgment in Niblock Excavating's favor. *Wallar v. Osterloo,* 718 N.E.2d 1243 (Ind.Ct.App.1999).

5. We note that both parties cited IND.CODE § 9–4–1–57, which had been repealed and recodified as amended in 1991 at I.C. § 9–21–5–4.

cifically, the violation of a motor vehicle statute creates a rebuttable presumption of negligence that may be overcome by evidence that the driver, even though violating the statute, acted as a reasonable prudent person would act under the circumstances. *Stepanek v. Durbin*, 640 N.E.2d 429, 430 (Ind.Ct.App.1994).

Here, the designated evidence shows that the weather was hazardous on the morning of the collision. Osterloo was familiar with Neff Street and estimated that he was going approximately 26 to 27 miles per hour. Appellant's App. at 156. Osterloo admitted, however, that his actual speed may have been different than what he had estimated. Appellant's App. at 157. Osterloo also acknowledged that he was unable to control his vehicle when the accident occurred, and he began to skid. After the impact, Osterloo's vehicle left lengthy skid marks on the road. This evidence gives rise to conflicting inferences of negligence that should be reserved for the finder of fact. Put another way, the issue of whether Osterloo's speed was appropriate given the weather and road conditions is a genuine issue of material fact. Thus, the trial court properly denied Osterloo's motion for summary judgment.

### B. Amendment of Answer

■ Osterloo next maintains that the trial court abused its discretion by denying him the opportunity to identify Mr. Wallar as a nonparty after Mr. Wallar's dismissal at the summary judgment stage of the proceedings. Specifically, he contends on appeal that it would be "fundamentally unfair to prevent a remaining defendant from raising the nonparty defense as to a dismissed defendant that could not properly have been sued by the plaintiff in the first place." Appellant's brief at 8.

■ Consistent with an underlying purpose to facilitate decisions on the merits and to avoid pleading traps, the Indiana Trial Rules generally implement a policy of liberal amendment of pleadings, absent prejudice to an opponent. *Kimberlin v. DeLong*, 637 N.E.2d 121, 128 (Ind.1994). For its decision to deny or allow the amending of a complaint, a trial court will be reversed only for an abuse of discretion. *See id.*

For purposes of fault allocation, the Comparative Fault Act allows defendants to assert that a nonparty caused a plaintiff's damages in full or in part. IND.CODE § 34–4–33–10(a) (1993) (recodified at IND. CODE § 34–51–2–14). The defendant faces certain time restrictions in pleading the nonparty affirmative defense:

> A nonparty defense that is known by the defendant when he files his first answer shall be pleaded as part of the first answer. A defendant who gains actual knowledge of a nonparty defense after the filing of an answer may plead the defense with reasonable promptness.

IND.CODE § 34–4–33–10(c) (1993) (recodified at IND.CODE § 34–51–2–14).

■ After the accident but before Charles had filed his complaint, the Comparative Fault Act's definition of "nonparty" had been amended. Therefore, the amended version of the Comparative Fault Act applies to the pleadings in this case. *Estate of Robinson v. C & I Leasing, Inc.*, 691 N.E.2d 474, 476 (Ind.Ct.App.1998) (holding that the Comparative Fault Act amendment was procedural and therefore application was prospective where the amendment had gone into effect after the injury but before the filing of the complaint), *trans. denied*. The Comparative Fault Act defines a "nonparty" as "a person who caused or contributed to cause the alleged injury, death, or damage to property but who has not been joined in the action as a defendant." IND.CODE ANN.

§ 34–4–33–2(2) (West Supp.1995) (recodified at IND.CODE § 34–6–2–88). Osterloo argues that out of fairness he should be allowed to amend his answer to add Mr. Wallar as a nonparty, even though Mr. Wallar had been joined as a defendant. Charles counters that, because Mr. Wallar had been joined in the action as a defendant, Mr. Wallar does not fall within the definition of a nonparty.

Our supreme court recently addressed this issue in *Owens Corning Fiberglass Corp. v. Cobb*, 754 N.E.2d 905 (Ind.2001). In that products liability case, the plaintiff had filed a complaint against thirty-three manufacturers or distributors of asbestos, including Owens Corning. Subsequently, some of those defendants settled with the plaintiff or were otherwise dismissed from the action. As a result, Owens Corning sought to add the former defendants as nonparties. *Id.* at 907. In response, the plaintiff argued in a summary judgment motion that the trial court should disallow the addition of the nonparties because 1) Owens Corning had not sought to add the parties in a timely manner, and 2) Owens Corning lacked sufficient evidence that the nonparties contributed to the plaintiff's injuries. The trial court granted the plaintiff's summary judgment.

Our supreme court initially observed that there were two obvious consequences of the fact that those parties were former defendants. First, since they were named defendants they could not be added as nonparties in the original answer. Second, they were known to the plaintiff. *Id.* at 914. Relying on the intent of the Comparative Fault Act, our supreme court reasoned:

> [I]t is clear to us that the notice provisions with respect to nonparty affirmative defenses are designed, first and foremost, to advise plaintiffs of potential named defendants from which they may

be able to obtain recovery and, secondarily, to put plaintiffs on notice generally of the contours of the defendant's case at trial. No violence is done to either of those objectives by permitting a defendant to assert a nonparty affirmative defense reasonably promptly after receiving notice that a named party defendant has been dismissed from the lawsuit.

*Id.* at 915. The Supreme Court then held that the trial court had committed reversible error in granting summary judgment to the plaintiff on Owens Corning's nonparty affirmative defense with respect to at least one nonparty. *Id.*

The same code provision, the same reasoning, and facts even more favorable to the defendant are present in the instant case. To begin with, Osterloo had originally named Mr. Wallar as a nonparty in one of his affirmative defenses. Charles then added Mr. Wallar as a defendant, forcing Osterloo to amend his answer because, by definition, Mr. Wallar could not be considered a nonparty. So Charles was apprised of a potential defendant from whom he could seek recovery. Moreover, Charles learned of the general contours of Osterloo's case—namely, the spreading of blame to Charles's father, among others. Thus, the underlying purpose of the Comparative Fault Act was satisfied. *See id.*

In light of *Cobb*, we conclude that the trial court abused its discretion in denying Osterloo the opportunity to add Mr. Wallar as a nonparty. Shortly after Mr. Wallar filed his motion for summary judgment—just fifteen days afterwards—Osterloo filed a motion to add Mr. Wallar as a nonparty in the event of Mr. Wallar's dismissal. In doing so, Osterloo acted with the reasonable promptness needed to satisfy I.C. § 34–4–33–10(c). Therefore, we find that the trial court abused its dis-

cretion[6] and reverse the trial court's order denying Osterloo's motion to amend his complaint to add Mr. Wallar as a nonparty.

Judgment affirmed in part, reversed in part, and remanded for further proceedings not inconsistent with this opinion.

BROOK, J., and BARNES, J., concur.

6. As our supreme court noted, it would "be within the trial court's discretion, as a matter of case management, to establish an orderly procedure in any given case for the potential dismissal of named party defendants and assertion of nonparty affirmative defenses with respect to those entities." *Cobb,* 754 N.E.2d at 915 n. 14.