**SUTTON FUNDING, LLC, Appellant–Plaintiff,**

v.

**Janusz JAWORSKI, and First Midwest Bank, Appellees–Defendants.**

**First Midwest Bank, Counterclaimant,**

v.

**Sutton Funding, LLC, Counter–Defendant.**

**First Midwest Bank, Cross–Claimant,**

v.

**Janusz Jaworski, Cross–Defendant.**

**No. 49A02–1006–MF–709.**

Court of Appeals of Indiana.

Feb. 23, 2011.

Transfer Denied July 6, 2011.

Mary A. Slade, Plunkett Cooney, Indianapolis, IN, Attorney for Appellant.

Kathryn D. Schmidt, Burke Costanza & Cuppy LLP, Merrillville, IN, Attorney for Appellee First Midwest Bank.

## OPINION

BAKER, Judge.

In the midst of a refinance of a mortgage, the refinancing mortgage broker requested a payoff statement from the mortgagee bank. The bank provided a payoff statement, and the broker and title agent relied on the amount contained in that payoff statement in good faith. Although it was later revealed that the payoff statement mistakenly understated the amount of the mortgage by a significant amount, the mortgage broker and title agent were entitled to a release of the mortgage pursuant to the Indiana Code. After a default on the mortgage, litigation ensued to determine whether the originating bank or the refinancing entity had priority with respect to the mortgage. The trial court found in favor of the originating bank, and we reverse.

Appellant–Plaintiff Sutton Funding, LLC (Sutton Funding), appeals the trial court's order granting summary judgment in favor of appellees-defendants Janusz Jaworski and First Midwest Bank (First Midwest). Sutton Funding raises a number of issues, one of which is dispositive: whether the application of Indiana Code section 32–29–6–13 (Section 13) requires that Sutton Funding be provided with a release of the mortgage at issue and that summary judgment be granted in Sutton Funding's favor. Finding that Section 13 requires such a result, we reverse and remand with instructions to enter an order directing First Midwest to release the mortgage to Sutton Funding and entering summary judgment in Sutton Funding's favor.

### FACTS

In March 2004, Jaworski executed a $325,000 promissory note (the 2004 Note) and mortgage (the 2004 Mortgage) to First Midwest, both of which originally matured on March 15, 2005. Between June 2005 and July 2006, Jaworski and First Midwest changed the terms of the 2004 Note three times, extending the maturity date on each occasion. The 2004 Mortgage was also amended accordingly on each occasion. The third change resulted in a maturity date of January 19, 2007.

Shortly following the third modification of the 2004 Note and the 2004 Mortgage, Jaworski approached Hartland Mortgage Centers, Inc. (Hartland), a mortgage broker, about refinancing the debt underlying the 2004 Mortgage. To determine Jaworski's credit-worthiness and to obtain funding, Hartland asked that First Midwest identify all mortgage loans of Jaworski that were secured by the subject property. First Midwest advised Hartland that Jaworski had one Mortgage Account with an original mortgage date of March 19, 2004, and an original mortgage amount of $325,000, which corresponds with the 2004 Note and the 2004 Mortgage.

EquiFirst Corporation (EquiFirst) agreed to fund Jaworski's refinance. Before closing of the refinance transaction, Hartland sought a formal payoff statement for the 2004 Mortgage, which First Midwest provided on February 6, 2007. This statement (the Payoff Statement) included the following representation:

> The payoff on [Jaworski's loan] is $268,000. Please forward the payoff to my attention at the address above.

> Additionally, the loan matured on January 19, 2007, and is subject to renewal. However [it] has not been renewed due to the pending refinance.

Appellant's App. p. 92. Neither the Payoff Statement, the 2004 Mortgage, or any of the modifications to the 2004 Mortgage mention any other condition for release of the mortgage.

On February 7, 2007, the day after Hartland received the Payoff Statement, a closing for the refinance proceeded, with Towne and Country Land Title Agency, Inc. (Towne and Country), acting as title agent. At closing, Jaworski borrowed $292,050 from EquiFirst, $268,000 of which was paid to First Midwest consistent with the Payoff Statement. Hartland and Towne and Country believed, based on the Payoff Statement, that the EquiFirst refinance mortgage (the 2007 Mortgage) would be first in priority, replacing the paid-off 2004 Mortgage, and would not have proceeded with the closing had they thought otherwise.

First Midwest accepted the $268,000 from the refinance, but did not release the 2004 Mortgage. Instead, in April 2007, two months later, First Midwest had Jaworski execute a fourth change to the 2004 Note and 2004 Mortgage. First Midwest also had Jaworski back-date the documents to January 19, 2007, the date on which the 2004 Note had matured, notwithstanding the undisputed fact that the modifications were not executed until April 3, 2007. First Midwest did not inform Hartland, EquiFirst, or Towne and Country of this post-refinance activity.

Jaworski defaulted on the 2007 Mortgage by failing to make payments when due. Consequently, on August 17, 2007, Sutton Funding, the current holder of the 2007 Mortgage and 2007 Note, filed a complaint to foreclose against Jaworski and First Midwest.

On June 18, 2008, First Midwest filed a counter- and cross-complaint. Among other things, it sought to foreclose the 2004 Mortgage and asserted that it was in first lien position on the subject property. First Midwest asserted that the 2004 Note still existed and that additional amounts were owed on that Note in connection with the post-refinance modification. In other words, First Midwest claimed that the debt had not been fully paid off with the $268,000 refinance proceeds.

The counterclaim also revealed, for the first time, a second mortgage debt that First Midwest believes is secured by the 2004 Mortgage—an October 19, 2005, loan made on an airplane in the amount of $118,944.91 by First Midwest to Jaworski. No document filed with the Marion County Recorder or Indiana Secretary of State discloses the airplane loan. The only publicly available security document on the airplane was filed with the Federal Aviation Administration (FAA). First Midwest now claims that the Aircraft Note is also secured by the 2004 Mortgage, and seeks to establish priority against Sutton Funding, via the 2004 Mortgage, for the Aircraft Note as well.

The parties filed cross-motions for summary judgment. Sutton Funding asked the trial court to hold that First Midwest is precluded from withholding the release of its mortgage pursuant to Section 13. In the alternative, Sutton Funding asked that the 2007 Mortgage be deemed to have priority over the 2004 Mortgage through the doctrine of equitable estoppel. First Midwest asked that the trial court hold the 2004 Mortgage to have priority based solely on the order of recording.

On June 2, 2010, the trial court entered the proposed order submitted by First Midwest with little or no explanation of its reasoning. The trial court granted summary judgment in First Midwest's favor, ordered that the 2004 Mortgage has priority over the 2007 Mortgage, and ordered that the 2004 Mortgage be deemed to secure all of First Midwest's debt, including the loan on the airplane. Sutton Funding now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

Summary judgment is appropriate only if the pleadings and evidence considered

by the trial court show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Owens Corning Fiberglass Corp. v. Cobb,* 754 N.E.2d 905, 909 (Ind.2001); *see also* Ind. Trial Rule 56(C). On a motion for summary judgment, all doubts as to the existence of material issues of fact must be resolved against the moving party. *Owens Corning,* 754 N.E.2d at 909.

### II. Section 13

Sutton Funding contends that Section 13 requires First Midwest to release the 2004 Mortgage, and that as a result, Sutton Funding is entitled to summary judgment. Section 13 provides, in pertinent part, as follows:

> A creditor or mortgage servicer may not withhold the release of a mortgage if the written mortgage payoff statement misstates the amount of the payoff and the written payoff is relied upon in good faith by an independent closing agent without knowledge of the misstatement....

I.C. § 32–29–6–13.

Here, it is undisputed that the Payoff Statement misstated the amount of the payoff. The only question remaining with respect to Section 13, therefore, is whether it can be held as a matter of law that the independent closing agent—here, Towne and Country—relied upon the Payoff Statement in good faith and without knowledge of the misstatement.

Towne and Country and Hartland both attested, via affidavit, that their representatives relied upon the payoff amount contained within the Payoff Statement. They further attested that, had they known of the actual circumstances underlying the 2004 Mortgage, they would not have proceeded with the transaction.

■ Although First Midwest has designated no evidence directly contradicting the affidavits, it directs our attention to a number of circumstances that it contends lead to a conclusion that Towne and Country and Hartland did not rely upon the Payoff Statement in good faith or that they had knowledge of the misstatement. Initially, First Midwest contends that because no release has been formally requested, Section 13 is not implicated. This argument elevates form over substance, inasmuch as it is readily apparent that, if nothing else, this lawsuit operates as a de facto request for a release. Furthermore, there is no explicit requirement in Section 13 that a release request be made, or, if so, when it must happen and what form it must take. We will not read such a requirement into the statute.[1]

Next, First Midwest argues that because the 2004 Mortgage contains a cross-collateralization provision, Towne and Country and Hartland should have been on notice that the 2004 Mortgage secured other debt as well. While Sutton Funding concedes that the cross-collateralization provision raised questions, they observe that those questions "are precisely why a written payoff statement was requested by Hartland and provided by First Midwest." Appellants' Br. p. 18. We agree with Sutton Funding. To resolve any remaining doubts about the nature of the 2004 Mortgage, Hartland requested the Payoff Statement, and was entitled to rely, and did rely in good faith, on that Payoff State-

---

1. First Midwest notes that there is another statute providing that Towne and Country could have recorded a certificate of release under these circumstances. Ind.Code § 32–29–6–9 (Section 9). There is absolutely no indication in Section 13, however, that Section 9 must be complied with before the independent closing agent is entitled to a release. Consequently, we do not find that Section 9 compels a different result than the one we reach herein.

ment. Thus, the cross-collateralization provision does not create an issue of fact with respect to Hartland or Towne and Country's good faith reliance.

 First Midwest next notes that it sent Hartland a Mortgage Verification form on November 8, 2006, indicating that the current balance on the 2004 Mortgage was $346,000. The Payoff Statement, sent in February 2007, indicated that the payoff of the loan was $268,000. According to First Midwest, this discrepancy should have put Hartland and Towne and Country on notice that there was an error in the Payoff Statement.

Initially, we observe that the point of a payoff statement is to assure the parties hoping to pay off the loan of the final, total amount needed to pay off the loan. Hartland and Towne and Country were entitled to rely on the Payoff Statement. To put the burden on them to notice discrepancies and raise questions would defeat the purpose of payoff statements altogether. First Midwest was the only party able to fully analyze the 2004 Mortgage and its attendant circumstances, and First Midwest made a mistake. Hartland and Towne and Country were not required to infer or guess that a mistake had been made. To the contrary, they were entitled to rely, and did rely, on the amount contained in the Payoff Statement. Hartland and Towne and Country were, in fact, "without knowledge" of the misstatement, and this discrepancy does not cause such knowledge to be imputed to them.

 Furthermore, we note that First Midwest is attempting to equate "in good faith" with "non-negligently," which is not borne out by the relevant authority. "Good faith" means "a state of mind indi-

cating honesty and lawfulness of purpose; belief in one's legal right; and belief that one's conduct is not unconscionable." *Owens v. Schoenberger*, 681 N.E.2d 760, 764 (Ind.Ct.App.1997); *see also* Ind.Code § 30–2–4–1(4) (defining "good faith," in a different statutory scheme, to mean "in fact done honestly, whether it be done negligently or not"). Here, it is entirely undisputed in the record that Hartland, Towne and Country, and EquiFirst acted, in fact, with honesty and lawfulness of purpose. There is simply no evidence in the record that creates a genuine issue of material fact related to the good faith of these parties in relying on the Payoff Statement, nor is there evidence in the record that they had knowledge of the misstatement contained in the Payoff Statement.

 On this record, therefore, it can be held as a matter of law that there was a misstatement in the Payoff Statement and that Hartland and Towne and Country relied upon the Payoff Statement in good faith and without knowledge of the misstatement. Consequently, Sutton Funding is entitled to a release of the 2004 Mortgage pursuant to Section 13, and summary judgment in its favor is warranted.[2]

The judgment of the trial court is reversed and remanded with instructions to enter an order directing First Midwest to release the 2004 Mortgage to Sutton Funding and entering summary judgment in Sutton Funding's favor.

VAIDIK, J., and BARNES, J., concur.

---

**2.** Although First Midwest is not entitled to enforce the 2004 Mortgage against Sutton Funding, Section 13 provides that its application "does not affect the ability of the creditor or mortgage servicer to collect the full

amount owed" from the debtor. I.C. § 32–29–6–13. Consequently, First Midwest is not entirely without remedy, inasmuch as it can still attempt to collect the full amount owed from Jaworski.