THE ERYK–MIDAMCO COMPANY, Mid–America Management Corporation, and Mark Misencik, individually, Appellants–Defendants,

v.

BANK ONE, N.A., Appellee–Plaintiff.

No. 49A02–0505–CV–417.

Court of Appeals of Indiana.

Feb. 10, 2006.

Michael C. Cook, Maureen E. Ward, Wooden & McLaughlin LLP, Indianapolis, for Appellants.

Jeffrey C. McDermott, Marc T. Quigley, Amy J. Adolay, Krieg DeVault LLP, Indianapolis, for Appellee.

## OPINION

BAKER, Judge.

Appellants-defendants The Eryk–Midamco Company (Eryk), Mid–America Management Corporation (Mid–America), and Mark Misencik (collectively, the Appellants) appeal from the trial court's order granting summary judgment in favor of appellee-defendant Bank One, N.A. (Bank One). The Appellants raise a number of issues, one of which we find dispositive; did the trial court err in failing to find that Bank One was barred from pursuing a conversion claim against the Appellants?[1] Concluding that Bank One is statutorily barred from pursuing its conversion claim against the Appellants by virtue of Indiana Code section 32–30–5–1 *et seq.*, the receivership statute, we find that summary judgment should be granted in favor of the Appellants.

---

1. The Appellants also argue that the trial court erred in: (1) concluding that Bank One had fulfilled the elements of a conversion claim against them; (2) concluding that Bank One had fulfilled the elements of a conversion claim against Misencik individually; and (3) failing to find that Bank One does not own the claim on which summary judgment was based. We need not address these arguments as the argument regarding the receivership statute is dispositive.

Additionally, Bank One cross-appeals from the trial court's order dismissing its claims against the Appellants for criminal conversion, defrauding a financial institution, criminal mischief, and deception. Concluding that the receivership statute also bars Bank One from pursuing these claims against the Appellants, we affirm the trial court's dismissal. Thus, we affirm in part and reverse in part.

### FACTS [2]

Eryk is a joint venture that owned a building in Indianapolis known as The 225 Building and leased certain real estate adjacent to the building (collectively, the Mortgaged Premises). Mid–America was Eryk's property manager. On December 23, 1985, Bank One and a predecessor-in-interest to Eryk entered into a Real Estate Mortgage and Security Agreement (the Mortgage) and a Collateral Assignment of Leases and Rents (the Collateral Assignment). On August 15, 1988, Eryk, Bank One, and a number of other parties entered into an Assignment and Assumption Agreement whereby Eryk's predecessor in interest assigned to Eryk all of its rights, title, and interest in and to, among other things, the Mortgage and the Collateral Assignment, and Eryk assumed all of the obligations and duties of its predecessor pursuant to those documents.

In accordance with the Mortgage, Bank One had a security interest in all rents, issues, proceeds, income, and profits from the Mortgaged Premises. Appellants' App. p. 199. In the event of default, Bank One was entitled to "foreclose the mortgage lien created by this Mortgage against the Mortgaged Property [and] to enforce every other security interest created by this Mortgage ...." *Id.* p. 210. Additionally, upon default, Bank One was entitled to "enter upon, take possession of and operate the Real Estate ... and, in its own name, sue for or otherwise collect and receive all Rents due to [Eryk], including those past due and unpaid." *Id.* p. 220.

By January 2001, Eryk had stopped making the required mortgage payments. Shortly thereafter, Bank One filed a complaint against Eryk and two individual guarantors to foreclose on the Mortgaged Premises. The parties agreed to the appointment of a receiver, who took control of the Mortgaged Premises on Bank One's behalf.

On February 5, 2001, the parties met to negotiate the terms of an Agreed Order Appointing Receiver (the Agreed Order). At this meeting, the parties stipulated that the Agreed Order would provide that all rents, income, and other amounts then due and unpaid or thereafter to become due were to be paid to the receiver. Appellants' App. p. 269. Additionally, the parties agreed to the following:

> Eryk–Midamco, its agents (including Mid–America Management Corporation), and their employees, and any other persons in possession thereof, including financial institutions, shall immediately turn over to the receiver all sums in existence on the date hereof that are derived from the Mortgaged Premises, including, but not limited to, (a) all cash in hand, (b) all cash equivalents and negotiable instruments ..., and (c) all sums held in accounts in any financial institutions (including, but not limited to, (i) tenant/lessees security deposits, (ii) deposits held in escrow for any purpose, such as for payment of real estate taxes and insurance premiums, (iii) proceeds of insurance that are maintained on or that pertain to

---

**2.** We held oral argument in this case in Indianapolis on January 18, 2006. We commend counsel for their able presentations and briefs.

the Mortgaged Premises, (iv) rent or prepaid rent, (v) funds designated or intended for capital improvements, repairs, or renovations to, or in connection with, the Mortgaged Premises, and (vi) all other sums of any kind relating to the use, enjoyment, possession, improvement, or occupancy of all or any portion of the Mortgaged Premises).

Appellants' App. p. 272.

During the meeting, unbeknownst to Bank One and while its representatives were out of the room, Misencik—the President of Mid–America—ordered Mid–America's controller to transfer $376,000 from the Eryk bank account to a Mid–America bank account. While Misencik and Mid–America admit that the transfer took place at Misencik's direction, they contend that his actions "merely brought about a transfer of money from one account Mid–America maintained for Eryk–Midamco to another." Appellants' Br. p. 27.

After Bank One learned of the transfer, it demanded that the transferred funds be turned over to Bank One or to the receiver. After the Appellants refused, Bank One moved to compel the depositions of Mid–America's controller and accountant. At those depositions, Bank One questioned the deponents about the source, makeup, and location of the rent proceeds that it contends were withheld from the receiver.

The receiver made a general request of the Appellants for all records, information, and sums of money that were derived from the mortgaged premises. The receiver's final report and request for discharge did not mention the rent proceeds, showed no asset of the receivership estate that could be considered equivalent to the rent proceeds, and listed no accounts receivable by the receivership estate. Bank One did not object to the receiver's final report, and on March 3, 2003, the trial court in the foreclosure action approved the report and discharged the receiver.[3] Previously, on April 10, 2002, the trial court in the foreclosure action entered judgment in rem in favor of Bank One in the amount of $6,231,789 plus interest in the amount of $582,599.22.

On February 4, 2003, Bank One filed its complaint against the Appellants, bringing claims for conversion, criminal conversion, defrauding financial institutions, criminal mischief, and deception. On October 23, 2003, the Appellants filed a motion to dismiss Bank One's amended complaint, alleging, among other things, that its claims failed as a matter of law because it could not establish that the Appellants exercised control over property owned by Bank One and previously entrusted to the Appellants. On December 22, 2003, the trial court partially granted the motion, dismissing all counts except for conversion.

On December 28, 2004, the Appellants filed a motion for summary judgment, raising the following arguments: (1) the claim for conversion was merged into the final judgment and the receiver's final report in the foreclosure action; (2) Bank One does not own the conversion claim because it turned over the claim to the receiver in the prior action and because it assigned the Collateral Assignment to Interforum; (3) the transfer of money at issue did not constitute conversion; and (4) Bank One had received all of the money to which it was entitled and, therefore, suffered no damage. On March 1, 2005, Bank One responded and filed a cross-motion for summary judgment, arguing that the transfer of funds ordered by Misencik on February 5, 2001, constituted conversion

---

**3.** We note that the attorneys representing Bank One and the Appellants on appeal did not represent their respective clients in the foreclosure action.

as a matter of law. Following a hearing on the motions, the trial court denied the Appellants' motion for summary judgment and granted Bank One's cross-motion for summary judgment.

The Appellants now appeal the denial of their motion and the grant of Bank One's cross-motion, and Bank One cross-appeals the trial court's order partially granting the Appellants' motion to dismiss.

## DISCUSSION AND DECISION

The Appellants argue that the trial court erred in granting summary judgment in favor of Bank One on its conversion claim. In particular, they contend that the trial court erred in failing to find that Bank One was barred from pursuing a conversion claim against them.

As we consider these arguments, we observe that summary judgment is appropriate only if the pleadings and evidence considered by the trial court show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Owens Corning Fiberglass Corp. v. Cobb,* 754 N.E.2d 905, 909 (Ind.2001); *see also* Ind. Trial Rule 56(C). On a motion for summary judgment, all doubts as to the existence of material issues of fact must be resolved against the moving party. *Owens Corning,* 754 N.E.2d at 909. Additionally, all facts and reasonable inferences from those facts are construed in favor of the nonmoving party. *Id.* If there is any doubt as to what conclusion a jury could reach, then summary judgment is improper. *Id.*

An appellate court faces the same issues that were before the trial court and follows the same process. *Id.* at 908. The party appealing from a summary judgment decision has the burden of persuading the court that the grant or denial of summary judgment was erroneous. *Id.* When a

trial court grants summary judgment, we carefully scrutinize that determination to ensure that a party was not improperly prevented from having his or her day in court. *Id.*

The receivership statute outlines the receiver's powers and duties, providing that the receiver may:

(1) bring and defend actions;

(2) take and keep possession of the property;

(3) receive rents;

(4) collect debts; and

(5) sell property;

in the receiver's own name, and generally do other acts respecting the property as the court or judge may authorize. Ind.Code § 32–30–5–7. Indiana Code section 32–30–5–18 also provides as follows:

(a) During the thirty (30) day period referred to in section 17 of this chapter, any creditor, shareholder, or other interested party may file objections or exceptions in writing to the account or report.

(b) Any objections or exceptions to the matters and things contained in an account or report and to the receiver's acts reported in the report or account that are not filed within the thirty (30) day period referred to in section 17 of this chapter *are forever barred for all purposes.*

(Emphasis added). Additionally, the statute describes the finality of the receiver's report once it is accepted by the trial court:

Upon the:

(1) court's approval of the receiver's final account or report, as provided in section 14 of this chapter; and

(2) receiver's performance and compliance with the court's order made on the final report;

the receiver and the surety on the receiver's bond shall be fully and finally discharged and the court shall declare the receivership estate finally settled and closed subject to the right of appeal of the receiver or any creditor, shareholder, or other interested party *who has filed objections or exceptions* as provided in section 18 of this chapter.

(Emphasis added).

■ Here, it is undisputed that the receiver was vested with the power to inquire into the disputed funds and the transfer ordered by Misencik. Indeed, the receiver could have pursued legal action against Misencik and Mid–America if he determined that to be the appropriate course of action. Similarly, the receiver was also able to consider and abandon such an action. The record here does not reveal whether the receiver was specifically aware of the transfer ordered by Misencik, but that is of no moment, inasmuch as the receiver requested all records, information, and sums of money that were derived from the mortgaged premises. In omitting any mention of the funds at issue from his final report, the receiver effectively abandoned this claim.

■ We cannot condone the secrecy with which Misencik ordered the transfer of the funds at issue. That being said, however, Bank One was well aware of the transfer by the time the court approved the receiver's final report. In fact, Bank One took two depositions in the foreclosure action in which it focused on this precise subject. Thus, Bank One could—and should—have objected to the omission of any mention of the disputed funds in the receiver's final report. Having failed to

object, however, it is "forever barred" from raising these claims against the Appellants. I.C. § 32–30–5–18(b); *see also Mut. Beneficial Life Ins. Co. v. Bachtenkircher,* 209 Ind. 106; 115, 198 N.E. 81, 85 (Ind.1935) (holding that "all matters litigated, or which could have been litigated in [a] foreclosure action, are 'forever at rest' ").

■ Bank One contends that its claims against the Appellants are separate and distinct from the matters litigated in the foreclosure action.[4] According to Bank One, its conversion claim is an independent tort that arose during the course of the foreclosure lawsuit, involving new facts and documents that were not at issue during the foreclosure action. But it is apparent that any claim Bank One makes to "rent proceeds" necessarily arises from the Mortgage and the Collateral Assignment because it is the Mortgage that gives Bank One a security interest in such rent proceeds. Appellants' App. p. 199. Once the trial court in the foreclosure action approved the receiver's final report and Bank One did not object, any claim Bank One may have had to money that was collectible by the receiver was extinguished except in the context of an appeal in that action. *See Ratcliff v. Citizens Bank of W. Ind.,* 768 N.E.2d 964, 969 (Ind.Ct.App. 2002), *trans. denied* (concluding that court's approval of receiver's final report serves as final judgment). Thus, Bank One is barred as a matter of law from bringing its conversion claim against the Appellants and the trial court should have granted summary judgment in the Appellants' favor.

4. Bank One also argues that its claims are not barred because it filed this lawsuit before the trial court in the foreclosure action approved the receiver's final report. But we agree with the Appellants that under that theory, "a final judgment would be meaningless so long as another case was filed prior to issuance of the final judgment." Appellants' Reply Br. p. 8. This result is untenable, and, accordingly, Bank One cannot succeed with this argument.

Similarly, Bank One's claims against the Appellants for criminal conversion, defrauding financial institutions, criminal mischief, and deception arise out of the Mortgage and the Collateral Assignment. Accordingly, it is barred from bringing those claims and the trial court properly granted the Appellants' motion to dismiss.

The judgment of the trial court is affirmed in part and reversed in part.

MATHIAS, J., and CRONE, J., concur.